**Andre J. THERIAULT et al.,**
**Plaintiffs,**

v.

**UNITED STATES of America,**
**Defendant.**

**No. 71-2384-AAH.**

United States District Court,
C. D. California.

June 16, 1975.

---

Thomas H. Lambert, Los Angeles, Cal., for plaintiffs.

James Stotter, II, Asst. U. S. Atty., for defendant.

## DECISION, FINDINGS OF FACT, CONCLUSIONS OF LAW AND ORDER FOR JUDGMENT

HAUK, District Judge.

This action, having come on for trial before this Court on January 7, 1975, and the Court having considered all the pleadings and memoranda filed, the stipulations of the parties to certain facts, the testimony given at the trial, the exhibits offered into evidence, and an *in camera* inspection of portions of the Air Force aircraft accident report which are at issue in this trial, makes the following findings of fact and conclusions of law:

### FINDINGS OF FACT

1. On June 13, 1971, an Air Force EC–135 aircraft crashed into the Pacific Ocean approximately 720 nautical miles south of the State of Hawaii and all twenty-four persons on board the aircraft perished. The Air Force, pursuant to its regulation (AFR.127–4 dated July 18, 1969, as amended September 19, 1969, and June 15, 1970) conducted an investigation to determine the cause of the crash and to make recommendations as to the corrective action necessary to preclude future aircraft crashes.

2. Plaintiffs, the survivors of a civilian employee of the United States Air Force who was killed in the crash, pursuant to another Air Force Regulation (AFR 12–30, 32 C.F.R. 805.6) implementing the Freedom of Information Act, requested that they be provided a complete copy of the aircraft accident report for their use in pursuing a wrongful death action now pending before Chief Judge Stephens of this District.[1]

3. The Air Force provided the bulk of the report to plaintiffs, but withheld certain portions of it, asserting these portions were exempt from mandatory disclosure under the Freedom of Information Act, 5 U.S.C. § 552(b). Specifically, the portions of the report withheld were:

(a) Those portions of Air Force Form 711, United States Air Force Accident/Incident Report, prepared by a member of the Aircraft Accident Investigation Board, which contain opinions, conclusions, speculations, and recommendations.

(b) The eleventh page of each of the nine Air Force Form 711gA, Life Sciences Report of an individual involved in an Air Force Accident/Incident. The information contained on the pages withheld consists of a summary of the Board members' opinions, speculations, conclusions, and advice to

---

[1]. The plaintiffs herein are also among the plaintiffs, and representative members of the class of all heirs of the victims who lost their lives on board the subject aircraft, in the wrongful death of Arthur Stoddard et al.

v. Linc-Tempco-Vought, No. 72–1294–ALS, a class action proceeding now pending before the Honorable Albert Lee Stephens, Jr., Chief Judge, United States District Court for the Central District of California.

the Board concerning the life support aspects of the accident.

(c) All of the transcript of the Board's proceedings, consisting of, among other things, the records of the deliberations of the investigating board.

(d) The text of the eight witness statements given to the Board under a promise of confidentiality.

4. The plaintiffs instituted this action under the Freedom of Information Act, 5 U.S.C. § 551 *et seq.*, on October 5, 1971, requesting this Court to enjoin the Air Force from withholding the documents in question.

5. This Court, on September 11, 1972, granted the plaintiffs' motion made under Rule 34, F.R.C.P. to inspect and copy the withheld documents and ordered the documents produced. The defendant then moved for reconsideration of the order and the Secretary of the Air Force at that time filed a claim of "Executive Privilege" with regard to the withheld portions of the aircraft accident report. This motion was denied, whereupon the defendant appealed. The United States Court of Appeals for the Ninth Circuit remanded the matter to this Court for a *de novo* hearing with the following guidelines:

> We realize that a given agency might fail to show a specific exemption protecting a given record and yet in good faith claim that dire adverse potentialities will occur and result from disclosure of a given record. See *Rose v. Department of Air Force*, 495 F.2d 261 (CA 2 1974). The main spring of the proceedings under the Act is a judicious weighing of the complainant's need for and entitlement to production as against the Government's or another's right to protection. We accept as a guideline for such a judicious weighing the teachings of *General Services Administration v. Benson*, 415 F.2d 878, 880 (CA 9 1969): 'In exercising the equity jurisdiction conferred by the Freedom of Information Act, a Court must weigh the effects of disclosure and nondisclosure, according to traditional equity principles, and determine the best course to follow in the given circumstances. The effect on the public is the primary consideration.' *Theriault v. United States*, 503 F.2d 390 at 392 (9th Cir. 1974).

6. Since 1944, it has been the policy of the Air Force that aircraft accident investigations under the Air Force Aviation Safety Program are to be used solely for aviation safety and will not be used for any disciplinary actions or disclosed to anyone outside of the Air Force. This policy was established to create an atmosphere that would permit aircraft accident witnesses to be completely frank and uninhibited in providing information to the accident investigators in the course of their examination under the Air Force Aviation Safety Program. In order to insure that witnesses understand this policy, the Air Force regulation (AFR 127–4 dated July 18, 1959, as amended) requires that witnesses to aircraft accidents be advised that "their testimony will be used solely for the purposes of flight safety and will not be released to persons outside of the Air Force." This promise is made to persuade witnesses, who are not sworn, to express their opinions and talk freely even though the information revealed may be unsupported in fact, self-incriminating, embarrassing or cast blame upon a friend or co-worker.

7. The Air Force likewise desires that the Safety Program investigators in evaluating the information they gather from the witnesses be completely candid in determining the cause of an accident. They are encouraged to speculate, opine, analyze and make recommendations that may not be fully supported by facts. In order to insure that all possible causes of an accident are identified and considered and all corrective actions are weighed, investigators operate with the understanding that their deliberations and their report will not be released outside of the Air Force or used for any purpose other than aviation safety.

8. The Air Force Aviation Safety Program is vital to the national defense of this country. The keystone of this program is the ability of the Air Force to obtain all available information pertaining to an accident. Without the information, the cause of an accident cannot be determined and the corrective action necessary to reduce future aircraft accidents cannot be identified. This, in turn, would result in the Air Force being weakened, since there would be less equipment and personnel available to perform its mission of defending the country. This is particularly true today when a single aircraft costs in excess of eighty million dollars. A weakened Air Force would unquestionably directly affect our national defense, national security, and the conduct of foreign affairs.

9. *In camera* examination of the withheld documents, including the witness statements, reveals that they contain speculations, analysis, opinions, guesstimates, "brainstorming," and exercises in logic. There is no information in these documents which could possibly assist or be of benefit to the plaintiffs in their wrongful death suit.

10. The defendant has demonstrated a substantial need for non-disclosure of the documents in question in this action; and plaintiffs have made no showing sufficient to outweigh defendant's needs.

11. The "public interest," which is the "primary consideration" in balancing the equities, is best served by non-disclosure of the documents.

12. Thus, using "traditional equity principles," the balance here is clearly in favor of the defendant and non-disclosure of the documents.

13. To the extent that these Findings of Fact contain Conclusions of Law, they shall be deemed incorporated within the Conclusions of Law.

### CONCLUSIONS OF LAW

1. This Court has jurisdiction over the subject matter of this action, the action being to enjoin the defendant from withholding certain unprovided portions of the aforesaid Air Force accident investigation report, pursuant to the Freedom in Information Act, 5 U.S.C. § 552.

2. The Freedom of Information Act was passed to increase the public's access to governmental records unless the records fall within the ambit of one of nine exemptions contained in the act. These exemptions are to be construed narrowly. *Sterling Drug, Inc. v. Federal Trade Commission*, 146 U.S. App.D.C. 237, 450 F.2d 698 (1971); *Soucie v. David*, 145 U.S.App.D.C. 144, 448 F.2d 1067 (1967). Whenever governmental records are withheld, the burden of establishing their exemption from mandatory disclosure rests with the agency concerned. 5 U.S.C. § 552(a)(3).

3. In addition to, and notwithstanding the applicability of the aforementioned nine exemptions, the trial court has and must exercise equity jurisdiction in that the Court must weigh the effects of disclosure and non-disclosure according to traditional equity principles and determine the best course to follow in the given circumstances. "The effect on the public is the primary consideration." *Theriault v. United States*, 503 F.2d 390, 392 (9th Cir. 1974).

4. The filing of a claim of Executive Privilege by the Secretary of the Air Force invokes the Court's equitable powers and requires the Court to balance the needs of the parties in addition to considering whether the documents in question are specifically exempted from disclosure under the Freedom of Information Act. *United States v. Reynolds*, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953); *Renegotiation Board v. Bannercraft Clothing Company*, 415 U.S. 1, 94 S.Ct. 1028, 39 L.Ed.2d 123 (1974); *Theriault v. United States, supra.*

5. If the Air Force, through the Secretary or one of his delegates, had followed the procedures outlined in Executive Order 11652, 3 C.F.R. 339, it

could have classified the documents in question "Top Secret," "Secret," or "Confidential" and thereby precluded any further proceedings by this Court, for the materials would then have been within the literal terms of the exemption provided by 5 U.S.C. § 522(b)(1). *See E.P.A. v. Mink,* 410 U.S. 73, 84, 93 S.Ct. 827, 35 L.Ed.2d 119 (1973). This the Air Force did not do. Even so, however, the disclosure of these documents would adversely effect the Air Force's Aviation Safety Program which has a direct bearing on the national security of this country. Therefore, the documents in question would clearly fall within the spirit if not the letter of the exemption provided by 5 U.S.C. § 552(b)(1) for documents which are required to be kept secret "in the interest of the national defense or foreign policy." This must be considered in balancing the competing interests.

6. The defendant has demonstrated a substantial need for non-disclosure of the documents in question in this action; and plaintiffs have made no showing sufficient to outweigh defendant's needs as a matter of law as well as fact.

7. The "public interest," which is the "primary consideration" in balancing the equities, is best served by non-disclosure of the documents as a matter of law as well as fact.

8. Thus, using "traditional equity principles," the balance here is clearly in favor of the defendant and non-disclosure of the documents as a matter of law as well as fact.

9. The disclosure of the withheld portions of the aircraft accident report would adversely affect the Air Force's Aviation Safety Program, which has a direct bearing on the national security of this country. Therefore, the documents in question fall within the ambit of the protection afforded by *United States v. Reynolds, supra,* 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953).

■ 10. The witness' statements in the Air Force Aviation Safety Program investigation which were given to the Air Force under a promise of confidentiality are exempted from mandatory disclosure by the terms of 5 U.S.C. § 552(b)(4). *Barceloneta Shoe Corp. v. Compton,* 271 F.Supp. 591 (D.P.R. 1967); *Brockway v. Department of Air Force,* 370 F.Supp. 738 (N.D.Iowa 1974); *Machin v. Zuckert,* 114 U.S. App.D.C. 335, 316 F.2d 336, *cert. denied,* 375 U.S. 896, 84 S.Ct. 172, 11 L.Ed.2d 124 (1963); *United States v. Reynolds, supra.*

■ 11. The findings and recommendations of the Accident Board, the Board's proceedings, and the final pages of the Life Science Reports contain opinions, conclusions, and speculations which are "intra-agency" communications that would not be available by law to a party other than an agency in litigation with an agency, and hence are exempted from mandatory disclosure by the provisions of 5 U.S.C. § 552(b)(5). *Wu v. National Endowment for Humanities,* 460 F.2d 1030 (5th Cir. 1972); *International Paper Company v. F.P.C.,* 438 F.2d 1349 (2d Cir. 1971); *Machin v. Zuckert, supra.*

12. The court makes no conclusions whatsoever with regard to whether or not any of the aforementioned conclusions are res judicata or collateral estoppel in the class action proceedings now pending before Chief Judge Stephens.

13. To the extent that these Conclusions of Law contain Findings of Fact, they shall be deemed incorporated within the Findings of Fact.

### ORDER FOR JUDGMENT

By reason of the foregoing Decision, Findings of Fact and Conclusions of Law, it is hereby ordered that Judgment be entered accordingly, denying plaintiffs' requested permanent injunction to require the Air Force to provide plaintiffs with a complete copy of the aircraft accident report on the June 13, 1971, crash in the Pacific Ocean of an Air Force EC–135 aircraft wherein twenty four persons died (Air Force Form 711) and particularly the portions thereof not heretofore provided to plaintiffs.