**COUNTY OF MADISON, NEW YORK et al., Plaintiffs, Appellees,**

**v.**

**UNITED STATES DEPARTMENT OF JUSTICE et al., Defendants, Appellants.**

**COUNTY OF MADISON, NEW YORK et al., Plaintiffs, Appellants,**

**v.**

**UNITED STATES DEPARTMENT OF JUSTICE, Defendant, Appellee.**

**Nos. 80–1562, 80–1589.**

United States Court of Appeals,
First Circuit.

Argued Dec. 1, 1980.

Decided March 3, 1981.

Tobin N. Harvey, Boston, Mass., with whom Allan van Gestel, and Goodwin, Procter & Hoar, Boston, Mass., on briefs, for County of Madison, New York, et al.

Bruce N. Bagni, Atty., Civ. Div., Dept. of Justice, Washington, D. C., with whom Edward F. Harrington, U. S. Atty., Boston, Mass., Alice Daniel, Asst. Atty. Gen., and Leonard Schaitman, Atty., Civil Division, Dept. of Justice, Washington, D. C., on briefs, for United States Department of Justice, et al.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

We consider in these appeals whether the Freedom of Information Act (FOIA), 5 U.S.C. § 552, requires that government documents relating to the settlement of a lawsuit involving the government be disclosed, or whether they may be instead withheld either under exemption five of the Act—the privileged inter- or intra-agency exemption [1]—or under a broader equitable exemption based on public policy principles.

## I

This case arises out of the actions of three groups of parties: the United States, the Oneida Indian Nation, and the counties of Oneida and Madison, New York ("Counties"). Prior to this case, the Oneidas had initiated two separate suits regarding New York land that previously belonged to them and that they sold between 1785 and 1846. The first suit ("Court of Claims suit") was filed against the United States in 1951. The Oneidas' theory in this suit was that unfair federal pressure and deceit in violation of the United States' fiduciary duty to the Oneidas rendered the United States liable to them for damages from the sale of these lands to New York. Interlocutory liability decisions against the United States issued in 1976 and 1978. *Oneida Nation v. United States*, 37 Ind.Cl.Comm. 522 (1976), aff'd, 576 F.2d 870 (Ct.Cl.1978); *Oneida Nation v. United States*, 43 Ind.Cl.Comm. 373 (1978). The damage portion of this suit is still pending in the U.S. Court of Claims.

The second Oneida suit ("district court suit") was filed against the Counties in federal district court in 1970. In this suit the Oneidas claimed that their lands had been improperly ceded to New York. They sought the fair rental value for and good title to these lands. In 1977 the district court ruled that the counties were liable to the Oneidas. *Oneida Indian Nation v. County of Oneida*, 434 F.Supp. 527 (N.D.N.Y.1977). The question of damages also remains to be litigated in this suit.

During the course of its appeal of the first Court of Claims suit liability decision, 576 F.2d 870 (Ct.Cl.1978), *supra*, the United States informed the Court of Claims in a January 1977 Appellant's Motion for Extension of Time that the United States and the Oneidas had engaged in a tentative settlement of the suit. This tentative settlement floundered, however, apparently due to the Oneidas' apprehension about its effect on their district court suit.

The Counties' attorney in the district court suit, van Gestel, learned of these negotiations and in March 1978 filed the FOIA disclosure request that lies at the heart of the present appeal van Gestel requested, pursuant to 5 U.S.C. § 552(a), that he be provided with all documents relating to this tentative Court of Claims case settlement. The United States Department of Justice replied to this request in May 1978 by stating that it had found in files 20 relevant documents totaling 50 pages. However, the Department released only portions of eight documents, totaling about four pages. It withheld the remainder un-

---

1. The FOIA's disclosure requirement does not apply to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency...." 5 U.S.C. § 552(b)(5).

der FOIA exemptions four[2] and five, 5 U.S.C. § 552(b)(4) & (5). One month after van Gestel's administrative appeal was denied in October 1978, he as plaintiff together with the Counties filed a request for declaratory and injunctive relief under 5 U.S.C. § 552(a) in the District of Massachusetts. Both he and the United States moved for summary judgment.

The district court divided the requested documents into the following three categories:

> "1. Documents relating to settlement offers and negotiation strategy within the Justice Department. Documents No. 1 through 6.
>
> "2. Letters by and between attorneys for the Oneida nation and the Justice Department concerning the government's decision whether to represent the Oneida nation. Documents No. 7 through 9.
>
> "3. Letters from the Justice Department to the Oneida attorneys discussing the settlement of [the Court of Claims case]. Documents No. 10 through 20."

The district court ruled that the FOIA's exemption four did not apply to any of the documents. It held that exemption five did not protect documents 7–9, and that the Department of Justice was required to disclose these letters. Documents 1–6 it decided were protected by exemption five. Finally, although the remaining documents did "not fall precisely within the [fifth] exemption", the court nonetheless felt "that the public policy encouraging nonlitigious solutions of disputes ... and the necessary candor that such a process contemplates

militates against disclosure of these records."[3]

Both parties appealed the adverse portions of this disposition. The United States then appended additional disclosures to an appellate brief before us from nine of the twenty documents as part of its "policy to continually review and evaluate the contents of material withheld from information requesters...."

## II

We will follow the district court's practice of dividing the requested documents into three categories. We begin with documents 10–20, the correspondence between the Oneidas' attorneys and the Justice Department proposing and discussing the settlement of the Court of Claims case.

## A

The district court initially ruled that documents 10–20 did not qualify either for exemption four or five. Before us the government challenges only the second of these rulings.

■■■ Exemption five applies to documents (1) that are "inter-agency or intra-agency memorandums or letters", and (2) that "would not be available by law to a party other than an agency in litigation with the agency...."[4] 5 U.S.C. § 552(b)(5). Since the lawyers for the Oneida Indians are not government agencies or agents, the United States concedes before us that documents 10–18 and 20 are "not literally inter- or intra-agency letters...."[5] Nonetheless, it proposes that

---

2. This exemption excludes "trade secrets and commercial or financial information obtained from a person and privileged or confidential...." 5 U.S.C. § 552(b)(4).

3. The district court made clear that these considerations also applied to documents 1–6.

4. The second clause of this test ensures that exemption five "exempt[s] those documents, and only those documents, normally privileged in the civil discovery context.... [Examples of such privileges are] (i) the 'generally ... recognized' privileges for 'confidential intra-agency advisory opinions ...,' ... disclosure of which 'would be "injurious to the consulta-

tive functions of government...."' ... (sometimes referred to as 'executive privilege'), and (ii) the attorney-client and attorney work-product privileges generally available to all litigants." *NLRB v. Sears, Roebuck & Co.*, 421 U.S. 132, 149, 95 S.Ct. 1504, 1515, 44 L.Ed.2d 29 (1975).

5. Document 19 differs from documents 10–18 and 20 in that it is a Justice Department memo to files, and hence literally is an "intra-agency" communication. The government claims that document 19 should be exempt on the same rationale as documents 1–6. Therefore we will discuss document 19 at the same time as we do documents 1–6. *See* part IIC *infra*.

we rely on cases that protect communications from outside consultants that an agency calls upon to assist it in internal decision-making as precedent for reading exemption five broadly enough to encompass the instant case. *See Ryan v. Department of Justice,* 617 F.2d 781 (D.C.Cir.1980); *Wu v. National Endowment for Humanities,* 460 F.2d 1030 (5th Cir. 1972), *cert. denied,* 410 U.S. 926, 93 S.Ct. 1352, 35 L.Ed.2d 586 (1973). It would have us focus not so much upon exemption five's "intra-agency" language as on the extent to which government settlement negotiations will be hampered if correspondence regarding such negotiations not found to be within the exemption.

We are sympathetic to the logic and force of this policy plea. The government engages in a prodigious amount of litigation, both as plaintiff and defendant. Negotiated settlement is the most efficient means to terminate such disputes. Knowledge that written settlement communications will be available to anyone, irrespective of the merit of his or her need to know, *see NLRB v. Sears, Roebuck & Co.,* 421 U.S. 132, 143 n. 10, 95 S.Ct. 1504, 1513 n.10, 44 L.Ed.2d 29 (1975), inevitably will to some extent impede this means.

Nonetheless the FOIA's legislative history "emphasize[d]" that the law "is not a withholding statute but a disclosure statute...." S.Rep. No. 1219, 88th Cong., 2d Sess. 11 (1954). *See Chrysler Corp. v. Brown,* 441 U.S. 281, 290 & n. 10, 99 S.Ct. 1705, 1712 & n. 10, 60 L.Ed.2d 208 (1979). The purpose of the legislation was to "eliminate" vague statutory phrases that agencies had previously used as "loopholes" for withholding information and "to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language ...." S.Rep. No. 813, 89th Cong., 1st Sess. 3 (1965). Consequently courts have repeatedly stated that uncertainties in the FOIA's language are to be construed in favor of disclosure and that its exemptions are to be

read narrowly. *E. g., Vaughn v. Rosen,* 484 F.2d 820, 823 & n. 11 (D.C.Cir.1973). Moreover, the government suggests no principled manner in which to confine FOIA's scope, should it persuade us to hurdle the limiting statutory language.

We therefore feel particularly constrained to require that sound policy arguments, however appealing, be grounded in a reading of statutory language that fairly reconciles rather than simply ignores the FOIA's phrasing. We perceive of no way, however, to describe the Oneidas' lawyers as "intra-agency"—that is to say "within the Department of Justice"—that does not simply omit the term "intra-agency" from the Act in pursuit of policy ends.

The *Ryan* and *Wu* cases are more defensible in this respect. Both go beyond the simplest measure of who is "within" an agency: the payroll. But in each case the agency contacted nonpayroll individuals to obtain information for the benefit of the agency. *See also Hoover v. United States Department of the Interior,* 611 F.2d 1132, 1138 (5th Cir. 1980); *Brockway v. Department of Air Force,* 518 F.2d 1184 (8th Cir. 1975); *Washington Research Project, Inc. v. Department of Health, Education and Welfare,* 504 F.2d 238, 249–52 (D.C.Cir.1974); *Soucie v. David,* 448 F.2d 1067, 1078 n. 44 (D.C.Cir.1971); *Martin Marietta Aluminum, Inc. v. Administrator, General Services Administration,* 444 F.Supp. 945, 949 (C.D.Cal. 1977). Although these cases leave literalness behind, they do describe situations quite similar to the "advice from staff assistants and exchange of ideas among agency personnel" that forms the object of exemption five. H.R.Rep. No. 1497, 89th Cong., 2d Sess. 10 (1966). In this case, by contrast, the Oneidas approached the government with their own interest in mind. While they came to parley, they were past and potential adversaries, not coopted colleagues. We recognize that the government also stood to benefit from a successful settlement, but we believe that expanding exemption five to include self-

seeking petitioners "within" agencies would do more violence to statutory language than Congress' direction permits. *See* Note, *The Freedom of Information Act and the Exemption for Intra-Agency Memoranda*, 86 Harv.L.Rev. 1047, 1064–65 (1973) (interested outside parties recommending particular agency action should not be covered by exemption five); Note, *The Freedom of Information Act: A Seven-Year Assessment*, 74 Colum.L.Rev. 895, 942 (1974) (same); *cf. Mead Data Central, Inc. v. United States Department of the Air Force*, 566 F.2d 242, 252 n. 16 (D.C.Cir.1977) ("overbroad interpretation of exemption five could nearly nullify the disclosure mandate of the FOIA"). The district court thus did not err in finding documents 10–18 and 20 to be beyond the "intra-agency" exemption five.

■ After holding that exemption five did not encompass these documents, however, the district court went on to grant the government summary judgment on the basis of public policy considerations. We recognize that some courts, *e. g., Consumers Union of United States, Inc. v. Veterans Administration*, 301 F.Supp. 796, 806 (S.D. N.Y.1969), and commentators, *e. g.*, Davis, *The Information Act: A Preliminary Analysis*, 34 U.Chi.L.Rev. 761, 767 (1967), have argued that the FOIA's grant of equitable jurisdiction, *see* 5 U.S.C. § 552(a)(4)(B) ("jurisdiction to *enjoin* . . . from withholding agency records"), carries with it an acknowledgement that courts are to enjoy traditional equitable discretion in administering the Act. We believe that this argument is contradicted by statutory language, 5 U.S.C. § 552(c), and legislative history. *E. g.*, S.Rep. No. 813, *supra*, at 10 ("The purpose of this subsection is to make clear beyond doubt that all materials of the Government are to be made available to the

public by publication or otherwise unless explicitly allowed to be kept secret by one of the exemptions in [then] subsection (e).") (emphasis deleted). *See EPA v. Mink*, 410 U.S. 73, 79, 93 S.Ct. 827, 832, 35 L.Ed.2d 119 (1973) (FOIA's "exemptions are explicitly made exclusive"). We therefore agree with cases such as *Soucie v. David*, 448 F.2d 1067, 1076–77 (D.C.Cir.1971), that find the explicitness of the FOIA's statutory exemptions overrides this traditionally unbounded equitable discretion.[6] We think that it would be doing a disservice to the day to day operation of the statute to read into it too readily a concept of the chancellor's foot. The principal effect of this would be to strengthen the reluctance to comply that the statute, at least in some areas, already invokes. Whatever may be thought to be sound public policy should be up to Congress. In this case we therefore decline the government's invitation to create a broad-ranging "settlement exemption" as a means of upholding the district court, whose holding in this respect we reverse.

### B

These precepts clarify the proper treatment of documents 7–9. The United States describes these documents as

"[l]etters from attorneys representing the Oneidas in the district court case to Justice Department officials requesting clarification of the relationship between the Court of Claims and district court litigations, reflecting concern that a settlement in the Court of Claims case might affect the Department's decision to represent the Indians in their case against the counties, discussing litigation strategy and legal theories in the case against the counties, and requesting that the government take an action that could potentially impact upon both cases."

---

**6.** *But see id.* at 1077 (possible "exceptional circumstances" exception); *Tennessean Newspapers, Inc. v. Federal Housing Administration*, 464 F.2d 657, 662 (6th Cir. 1972) (same); *Halperin v. Department of State*, 656 F.2d 699, 706–07 (D.C.Cir.1977) (in case alleging "grave damage to the national security", suggestion of "some discretion in extreme circumstances"); Note, *The Freedom of Information Act: A Seven-Year Assessment*, 74 Colum.L.Rev. 895, 920 (1974) ("resort to equity would be a truly extraordinary measure, rarely invoked").

The district court ruled that these documents "do not fall within any plausible exemption." Before us the United States argues that these documents should be exempt on equitable grounds of public policy. We dismiss this argument for the reasons just elaborated.

■ The United States also urges that these documents properly fall within exemption five. It reasons that the "unique fiduciary relationship between the government and the Indians", see 25 U.S.C. § 177; *Joint Tribal Council of the Passamaquoddy Tribe v. Morton*, 528 F.2d 370, 375–76, 379 (1st Cir. 1975), requires that communications between the two remain confidential so as to maintain "the trust and confidence necessary to sustain the government's relationship with the Oneidas, and Indians in general."

We might agree with the sense of this position. We confess to feeling a sense of indecent exposure in countenancing a third party adversary obtaining confidential exchanges between the Indians' attorneys and the government. But we cannot agree that this means that Indians are "within" the Department of Justice. The government's plea that it should be able to guarantee confidentiality for its dealings with special nongovernment parties would be more properly couched in argument that the relevant provision here instead is exemption four, which excepts from disclosure "information obtained from a person and privileged or confidential." 5 U.S.C. § 552(b)(4). This position would be countered, however, by exemption four's limitation to "commercial or financial information." *Id.* Although commentators have lamented the wisdom of this limitation as "clearly . . . unsatisfactory", 1 K. Davis, *Administrative Law Treatise* § 5:32 at 400 (1978), the United States by not making this argument apparently acquiesces in exemption four's inapplicability. That Congress' wording of exemption four may be regrettable does little to convince us, however, that we should effectively compensate by glossing

the "intra-agency" language of exemption five.

Documents 7–9 are letters originating outside of government initiating communication designed to procure private advantage. They therefore resemble the settlement communications that we have just decided differ crucially from the information at issue in the *Wu* and *Ryan* cases, which came from outside consultants from whom the government had requested information to aid its own policy deliberations. Although the line between supplicants and consultants may not always be clear, we think that it is in this case. The district court thus did not err in holding that documents 7–9 fell within no FOIA exemption.

## C

Documents 1–6 and 19 consist of internal government communications regarding the settlement of the Court of Claims case. In its initial response to van Gestel's request, the United States declined to release any of these documents (except for five sentences from document 4) on the grounds of exemption five. The United States also claimed that document 19 was protected by exemption four.

The district court found that documents 1–6 were protected by both the general considerations of public policy that we have ruled to be legally insufficient and, in a one sentence conclusion, by exemption five. It included document 19 in its statement that "the majority of the documents sought by the plaintiff do not fall precisely within" exemption five, a finding that the United States sought to have amended on the basis that document 19 was in fact an "intra-agency" memorandum. *See* note 5 *supra*. The district court, however, never ruled on this Rule 60(b) motion.

Before us van Gestel does not challenge the propriety of the district court's ruling that portions of documents 1–6 do in fact fall within exemption five, nor does he urge that the district court's failure to inspect

the documents in camera was error. Rather he confines his attack to the district court's failure—which it did not explain—to order that reasonably segregable, non-exempt portions of documents 1–6 be released to him.

In attempting to assess whether a portion of these documents might reasonably be thought to be non-exempt material, we lack a fully articulated and complete analysis of a point that van Gestel's argument assumes: that exemption five indeed does apply to the material at hand. As previously mentioned, this exemption covers only (1) intra- or inter-agency communications (2) that are not available to a private party in litigation with the agency. Once a communication is found to meet the intra- or inter-agency criterion, it must then be examined to see if any privilege shields it from disclosure, such as attorney-client privilege or its being part of the internal deliberative process.

The district court apparently failed to note that the first "intra-agency" requirement was satisfied with respect to document 19, although its opinion is ambiguous on this issue. The government's Rule 60(b) motion provided an opportunity for the court to clarify this point, but the court did not rule on this motion. Therefore both steps of the basic exemption five analysis must be conducted for document 19 before there can be an informed ruling on the appropriateness of ordering disclosure for segregable non-exempt material.

Documents 1–6 evidently do satisfy the first "intra-agency" step of analysis, since they consist entirely of communications between government officials. The district court's opinion, however, does little to illuminate the more difficult second branch of exemption five's test; its entire analysis consists of this statement: "Documents No. 1 through 6 are also covered by the inter/intra-agency exemption of 5 U.S.C. § 552(b)(5)." Therefore we do not know on what ground the court thought that these documents would not be available to a par-

ty litigating with an agency. This critically hampers our ability to assess both the breadth of exemption five in this case and, consequently, whether there are apt to be non-exempt portions of these documents.

■ The district court's brevity in analyzing exemption five no doubt was influenced by the fact that this was a secondary ground for its nondisclosure holding. This ground has become critical, however, as we have set aside its primary reasoning regarding equitable public policy discretion under the Act. We therefore remand this portion of the case to the district court. On remand the district court should reconsider its ruling about document 19 in light of the United States' points in its Rule 60(b) motion. It should also fully elaborate its exemption five analysis concerning documents 1–6. Finally, it should deal with van Gestel's request for action ordering the government to release segregable, non-exempt portions of all of these documents, taking such measures as may prove necessary to this determination. *See EPA v. Mink*, 410 U.S. 73, 93–94, 93 S.Ct. 827, 838–39, 35 L.Ed.2d 119 (1973).

\* \* \* \* \* \*

The district court's holding that documents 7–18 and 20 are not covered by exemption five is affirmed. Its holding that documents 10–18 and 20 can be withheld on public policy grounds is reversed. Its holdings regarding documents 1–6 and 19 are vacated and the case is remanded for proceedings consistent with this opinion.