AMOLSCH & MADDEN, INC., d/b/a FTC: WATCH, Appellant,

v.

FEDERAL TRADE COMMISSION.

No. 78–1699.

United States Court of Appeals, District of Columbia Circuit.

Oct. 31, 1978.

Opinion Ordered Published Dec. 14, 1978.

Before WRIGHT, Chief Judge, and TAMM and LEVENTHAL, Circuit Judges.

# 810

## JUDGMENT

### PER CURIAM.

This cause came on to be heard on the record on appeal from the United States District Court for the District of Columbia and was argued by counsel. While the issues presented occasion no need for an opinion, they have been accorded full consideration by the court. *See* Local Rule 13(c).

This court finds itself in agreement with the result reached by the District Court for the reasons stated in its opinion dated June 30, 1978.

On consideration of the foregoing, it is ORDERED and ADJUDGED by this court that the judgment of the District Court appealed from in this cause is hereby affirmed.

## APPENDIX

### AMOLSCH & MADDEN, INC., d/b/a FTC: WATCH, Plaintiff,

v.

### FEDERAL TRADE COMMISSION et al., Defendants.

Civ. A. No. 77–1553.

United States District Court,
District of Columbia.

June 30, 1978.

## OPINION

JOHN LEWIS SMITH, Jr., District Judge.

Plaintiff brought this action under the Freedom of Information Act (hereinafter "Act"), 5 U.S.C. § 522, to compel disclosure of one document, a compliance report, incorporated in a consent order, which delineates those former students to whom the vocational school subject to that order must pay tuition refunds. Defendants have invoked the seventh exemption of the Act, 5 U.S.C. § 552(b)(7), contending that the document is an investigatory document, release of which would interfere with enforcement proceedings. This case is before the Court on Cross-motions for Summary Judgment.

In June, 1971, the government commenced an investigation into a Ryder subsidiary, Ryder Schools, which offered vocational training to would-be truck drivers and heavy equipment operators. The investigation concerned the truthfulness of representations by Ryder Schools concerning the prospects for placement of its graduates in jobs for which they were to be trained.

After investigation and prior to the issuance of a formal adjudicative complaint by the Commission, Ryder tentatively agreed to an outline of the settlement that would provide partial refunds to former students, up to the total redress amount of $1.5 million. During the negotiations it became evident that standards would be useful in determining which former students would be eligible for restitution. Such standards were negotiated, but Ryder and the Federal Trade Commission (hereinafter "FTC") staff felt that these standards should be kept confidential until questionnaires being sent to former students were returned so that students who were aware of the standards could not tailor their responses to ensure that they would receive a refund.

To provide this confidentiality, the supervising government attorney suggested that instead of placing the standards in the agreement itself, they be embodied in a compliance report, which under the Commission's Rules of Practice, 16 C.F.R. § 2.33, may be accorded confidential treatment for the Report. The FTC provisionally accepted the consent agreement on or about January 18, 1977. The consent agreement was placed on public record for comment for 60 days. After reviewing the consent agreement in light of the comments received, the Commission gave final approval to the agreement on December 28, 1977.

Plaintiff filed a Freedom of Information Act request for the withheld initial compliance report. The request was denied, and an appeal to the Commission resulted in a similar denial. As ground for its denial, the FTC relied on the exemption contained in Section 552(b)(7)(A) of the Act relating to

investigatory records compiled for law enforcement purposes, production of which would interfere with enforcement proceedings.

The present action followed. Here plaintiff contends that the compliance report is part of the order and must be disclosed; that the compliance report is not "investigatory"; and that it would not interfere with enforcement proceedings.

An agency, seeking the protective shelter of a statutory exemption to justify its refusal to disclose records, has the burden of proving that the document involved falls within the exemption. *Getman v. NLRB*, 146 U.S.App.D.C. 209, 212–213, 450 F.2d 670, 673–674 (1971). The Freedom of Information Act reflects a public policy of favoring citizen access to government records. "The legislative plan creates a liberal disclosure requirement, limited only by specific exemptions which are to be narrowly construed." *Bristol-Myers Co. v. FTC*, 138 U.S. App.D.C. 22, 25, 424 F.2d 935, 938, *cert. denied*, 400 U.S. 824, 91 S.Ct. 46, 27 L.Ed.2d 52 (1970). *Accord, Ditlow v. Shultz*, 170 U.S.App.D.C. 352, 355, 517 F.2d 166, 169 (1975); *Getman v. NLRB*, 146 U.S.App.D.C. 209, 450 F.2d 670 (1971).

Plaintiffs contend that defendants have not carried this burden, citing *United States v. Trucking Employers, Inc.*, 39 Ad. L.2d (P & F) 694 (D.D.C.1976), for the proposition that compliance reports do not qualify as "investigatory records". In that case, Chief Judge Bryant of this Court stated:

> Finally, the companies argue that exemption (b)(7) applies here, in that the material constitutes investigatory files compiled for law enforcement purposes. The leading cases in this circuit make clear that these files cannot be characterized as either investigatory or compiled for law enforcement purposes, since they are *subsequent* to an adjudication and are used solely to monitor compliance with the consent decree in this case, not to evaluate compliance with federal law with a possible statutory enforcement action resulting. *Id.* at 698 (emphasis in original).

The rules of the FTC provide for two types of documents that are "compliance reports." The compliance report at issue here is an initial report, defined at 16 C.F.R. § 2.33 as "setting forth in precise detail the manner in which the respondent *will* comply with the order *when and if* entered". (emphasis added). The more traditional form of compliance report indicates how the respondent has complied with an order and is found under the section relating to adjudications, 16 C.F.R. § 3.61. It is this second type of FTC compliance report which is involved in the *Trucking Employers* case.

The difference between this case and *Trucking Employers* is the difference between the past and the future. In *Trucking Employers* the compliance reports followed and related to a completed adjudication. In the instant action, the compliance report reflects the results of a lengthy FTC investigation of hiring practices in trucking and heavy equipment operation, and looks to a future adjudication of refund claims to be submitted by Ryder graduates.

This adjudicatory process consists of several steps. On June 14, 1978 Ryder's independent contractor mailed the affidavit questionnaires to certain Ryder graduates, pursuant to Paragraph 4 of Part III of the order. The completed questionnaires and clarifying information will be returned by November 6, 1978, pursuant to Paragraph 10(e) of Part III of the order. Then the refund claims will be adjudicated by the FTC and Ryder, and in the event of disagreement, by arbitrators pursuant to the rules of the American Arbitration Association. The compliance report will be used in this adjudicatory process to determine refund eligibility.

Since the publication of the compliance report at this time would interfere with prospective law enforcement proceedings, this case is clearly different from *Trucking Employers*. It is evident the compliance report in question should be given (b)(7)(A) protection for the limited period of time requested. The compliance report in this case will be made public on November 7, 1978, one day after the November 6 dead-

line for the submission of the affidavit questionnaires and clarifying information.

Accordingly, defendant's motion for summary judgment is granted and plaintiff's motion for summary judgment is denied.