**CENTER FOR AUTO SAFETY,**
Plaintiff,

v.

**DEPARTMENT OF JUSTICE,**
Defendant.

Civ. No. 82–0714.

United States District Court,
District of Columbia.

June 16, 1983.
Amended June 23, 1983.

David C. Vladeck, Public Citizen Litigation Group, Washington, D.C., for plaintiff.

Laura F. Einstein, Dept. of Justice, Washington, D.C., for defendant.

## MEMORANDUM OPINION AND ORDER

THOMAS F. HOGAN, District Judge.

### I. Introduction

This case is before the Court on cross motions for summary judgment. Plaintiff, the Center for Auto Safety (the "Center"), requests declaratory and injunctive relief requiring the Defendant, the Department of Justice ("DOJ" or the "Government"), to release certain documents requested by it under the Freedom of Information Act ("FOIA").[1] The documents concern the DOJ's consent to the modification of certain restrictions in a 1969 antitrust Consent Decree entered into by the automotive industry (hereinafter the "Consent Decree").[2]

■ The principal questions presented in this case are whether the documents requested are exempt from disclosure pursuant to Exemption 5[3] and/or Exemption

---

**1.** 5 U.S.C. Sec. 552.

**2.** On January 10, 1969 the DOJ filed an antitrust complaint, following a grand jury investigation, charging that the principal automotive manufacturers, General Motors Corporation, Ford Motor Company, Chrysler Corporation, and American Motors Corporation, and their trade association, the Motor Vehicle Manufacturers Association, Inc., had "conspired with others to eliminate competition in the development and installation of motor vehicle emission control devices in violation of Section 1 of the Sherman Act, 15 U.S.C. [Sec.] 1." *United States v. Motor Vehicles Manufacturers Ass'n,* Civil No. 619–75–JWC, slip op. at 2 (C.D.Cal., Nov. 3, 1982). The action was settled by "entry of a final judgment" by Consent Decree on October 29, 1969, without the admission of any wrongdoing, but with the imposition of various restrictions designed to preclude anticompetitive cooperation. *Id.* at 3. Two of the provisions, one prohibiting "collusion" by less obvious means and another prohibiting the exchange of "confidential" or "restricted" information, were set to expire in 1979. *Id.* at 3–4. In 1978, the DOJ moved to extend the two restrictions. *Id.* at 4. The district court initially granted the extension, but on reconsideration denied the request. *Id.* The Court of Appeals set aside the denial and the district court ordered the parties to comply with the notice, comment, and evidentiary procedures set forth in Section 2 of the Antitrust Procedures and Penalties Act—Expediting Act, 15 U.S.C. Sec. 16(b)–(g). *Id., on appeal,* 643 F.2d 644 (9th Cir.1981). Finally, on November 3, 1982, the district court approved certain modifications to the 1969 Consent Decree, ruling that the automotive marketplace had undergone substantial change since 1969 due to international competition, the energy crisis, new technology, and an economic downturn. *Id.* at 9–11.

While the merits of the antitrust case are not relevant to this suit, its procedural history is relevant to the application of the FOIA, as appropriately noted throughout this opinion, and helpful to those seeking to understand the instant action.

**3.** Exemption 5 to the FOIA provides in relevant part:

This section does not apply to matters that are—

(5) inter-agency or intra-agency memorandums or letters which would not be available

7(A)[4] of the FOIA. 5 U.S.C. Sec. 552(b)(5), (7)(A). This requires the Court to carefully review the plaintiff's request and decide whether the statutory presumption in favor of disclosure is overcome by the language and purpose of either Exemption 5 or Exemption 7(A).[5]

## II. *Procedural and Factual Background*

In order to decipher which documents are at issue in this case, it is necessary to review the initial request of the plaintiff and the DOJ's responses thereto. The Center filed its FOIA request on November 25, 1981, noting its interest in the automobile industry antitrust case. It requested the release of all documents, records, and communications prepared in connection with the Government's decision to seek a modification of the Consent Decree. Plaintiff's Exh. A. After requesting additional time on November 25, 1981, the DOJ responded on January 5, 1982. Defendant's Exh. B. It disclosed some 139 pages of documents, withholding portions thereof, and withheld 53 documents in their entirety. Declaration of Leo D. Neshkes, par. 6, and Defendant's Exh. B. The portions of the first 139 pages were withheld pursuant to Exemptions 7(C) and 7(D) of the FOIA, while the latter 53 documents were withheld pursuant to Exemption 7(A) and, in part, under Exemption 5.[6]

---

by law to a party other than an agency in litigation with the agency ....
5 U.S.C. Sec. 552(b)(5).

**4.** Exemption 7(A) to the FOIA provides:
This section does not apply to matters that are—
(7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings ....
5 U.S.C. Sec. 552(b)(7)(A).

**5.** The fundamental purpose of FOIA is disclosure. *E.g., Federal Open Market Committee v. Merrill,* 443 U.S. 340, 352, 99 S.Ct. 2800, 2808, 61 L.Ed.2d 587 (1979); *Chrysler Corp. v. Brown,* 441 U.S. 281, 290 & n. 10, 99 S.Ct. 1705, 1712 & n. 10, 60 L.Ed.2d 208 (1979); *County of Madison, N.Y. v. U.S. Department of Justice,* 641 F.2d 1036, 1040 (1st Cir.1981); *Coastal States Gas Corp. v. U.S. Department of Energy,* 617 F.2d 854, 858 (D.C.Cir.1980); *Willamette Industries, Inc. v. United States,* 530 F.Supp. 904, 905 (D.Or. 1981). FOIA was enacted "to 'eliminate' vague statutory phrases that agencies had previously used as 'loopholes' for withholding information. and 'to establish a general philosophy of full agency disclosure unless information is exempted under clearly delineated statutory language ....'" *County of Madison, supra,* 641 F.2d at 1040, *quoting,* S.Rep. No. 813, 89th Cong., 1st Sess. 3 (1965). *Accord, Vaughn v. Rosen,* 484 F.2d 820, 823 & n. 11 (D.C.Cir.1973), *cert. denied,* 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974). Expansive readings of FOIA exemptions are looked upon with disfavor and should be based on a clear indication that Congress intended the documents to be exempt. *Cf. Federal Open Market Committee, supra,* 443 U.S. at 354–55, 99 S.Ct. at 2809–10 (extension of Exemption 5 beyond the attorney work product and executive privileges "must be viewed with caution");

*N.L.R.B. v. Robbins Tire & Rubber Co.,* 437 U.S. 214, 224–34, 98 S.Ct. 2311, 2318–23, 57 L.Ed.2d 159 (1978) (statement in legislative history that documents fall within exemption given great weight in construing ambiguity in FOIA).

**6.** The Response Letter stated in relevant part:
Enclosed are some 139 pages of document copies which appear to be responsive to your request. Deleted portions of certain of these documents are, in our view, exempt from compulsory disclosure under the Act. Deleted from documents reflecting correspondence from an individual outside the Department are the name and such other identifying material as are believed necessary to protect the identity and privacy of this individual. This deleted material falls within exemption 7(C)–(D) of 5 U.S.C. 552(b).
In addition, some 415 pages of [53] documents are being withheld in their entirety. This material consists of the following: forty-one pages of internal Department memoranda, twenty-two pages of correspondence between Division staff attorneys and the defendants in *U.S. v. Automobile Manufacturers Association,* and 352 pages of draft stipulations and modified consent decrees. All of this material was generated as part of the Division's ongoing law enforcement efforts to determine whether or not and to what extent the consent decree in the subject case should be modified. Premature release of this information would jeopardize the successful completion of this active law enforcement proceeding by disclosing Division work product, interfering with the Division's pre-decisional deliberative process, and disrupting the negotiations being conducted by Division attorneys and defense counsel. *Since release of this material would be disruptive of and adversely affect Division efforts in this ongoing matter, it is being withheld pursuant to 5 U.S.C.*

█ Plaintiff appealed the denial solely with respect to the "over 400 pages ... being withheld from disclosure *largely* on the basis of Exemption 7(A)." Plaintiff's Exh. G (emphasis added). After the DOJ notified the Center that its appeal would be considered in turn and would not receive expedited treatment, *see* Plaintiff's Exhs. H, I and J, plaintiff filed suit on March 11, 1982, for injunctive relief ordering the release of the "documents withheld on the basis of Exemption 7(A) ...".[7] Several weeks later, on April 23, 1982, the Center filed a partial motion for summary judgment with respect to those documents "which are being withheld exclusively on the basis of Exemption 7(A), *and* which were submitted by, or disclosed to, the defendants in the Smog Conspiracy Case."[8]

By letter dated May 24, 1982, the DOJ responded to plaintiff's appeal and released 16 additional documents. Neshkes Declaration, pars. 8, 9; Defendant's Exh. D. The response noted that the additional materials released consisted of all those documents withheld "exclusively" pursuant to Exemption 7(A) and that the remaining 37 documents, or portions thereof, are withheld pursuant to Exemptions 5 and 7(A). *Id.*

Shortly thereafter on June 3, 1982, the DOJ filed a motion for summary judgment with respect to all of the documents embraced by the complaint in this case. In its motion, the DOJ contends that the remaining 37 documents, an index of which is attached as Defendant's Exh. E, are properly exempt from mandatory disclosure pursuant to both Exemptions 5 and 7(A).[9]

The documents can be divided into three separate groups for analytical purposes. The first group, Document Nos. 1–4 and 23, consists of those documents prepared by the DOJ in connection with the modification to the Consent Decree, but which were not shown to defendants in the Consent Decree case. The second group, Document Nos. 5–10, 12–20, and 24–37, consists of those documents prepared by the DOJ in connection with the modification to the Consent Decree but which were shown or transmitted to the defendants. The third group, Document Nos. 11, 21, and 22, consists of those documents prepared by the defendants in the Consent Decree case and submitted to the DOJ in connection with its decision to propose a modification to the Consent Decree. Plaintiffs, in their Reply Memorandum at 11 n. 3, after reviewing the DOJ's motion and index of documents, withdrew their claim for any "documents which were not furnished by or shared with

> 552(b)(7)(A). I would also note that certain of these documents reflect Division work product and pre-decisional deliberative communications that are exempt pursuant to 5 U.S.C. 552(b)(5).

Defendant's Ex. B (emphasis added).

7. The plaintiffs urged the DOJ to consider their appeal within 10 days because it needed to review the documents in connection with its effort to prepare comments within 60 days of the day the proposed Consent Decree which was published in the Federal Register (49 Fed.Reg. 7529, Feb. 19, 1982). Plaintiff's Exh. I. Under 5 U.S.C. Sec. 552(a)(3), documents must be furnished promptly on request, unless exempt, and a request for an expedited appeal is not a frivolous matter. Under the standards of *Open America,* the DOJ should have explained why the plaintiff's request for expedited treatment did not "demonstrate an urgency sufficient to warrant preferential treatment ...," as opposed to responding in a terse conclusory manner. *See* Plaintiff's Exh. J. *See Open America v.*

*Watergate Special Prosecution Force,* 547 F.2d 605 (D.C.Cir.1976).

8. The court notes that the term "exclusively" was not used in the administrative appeal or the complaint. Its use in plaintiff's motion for partial summary judgment limits the motion to only those documents to which Exemption 7(A) alone was asserted. As will become clear below, this limitation became irrelevant when the DOJ filed its motion for summary judgment, and the parties conceded there are no material facts in issue. *See generally* 6 Moore's Federal Practice ¶ 56.12 (1982).

9. While the DOJ claims there is some question as to which documents are still in dispute, now that it has disclosed all of the documents withheld exclusively under Exemption 7(A), the Court finds there is no question. Plaintiff's lawsuit, as opposed to its motion for partial summary judgment, covers all documents withheld pursuant to Exemption 7(A), regardless of the applicability of other exemptions, as did its administrative appeal.

the Smog Conspiracy Defendants. (Documents number 1–4 and 23 ...).'' Accordingly, the court finds the only questions remaining before it concern the second and third groups of documents since the first group is not to be disclosed.

The DOJ argues that all of the remaining documents are exempt from mandatory disclosure under FOIA. Both Exemption 5 and Exemption 7(A) are cited as independent grounds for withholding all or part of the remaining 32 documents. In support of its motion for summary judgment, two affidavits are attached from Leo D. Neshkes [10] and Bernard M. Hollander,[11] which set forth in detail the nature and function of the documents withheld and the potential harms which would flow from release of the documents. The essence of the DOJ's argument is that: (1) the documents withheld are an integral part of the Department's decision-making process leading to the modification of the consent decree and are exempt from disclosure as internal predecisional government documents under Exemption 5;[12] and (2) the same documents are investigatory records whose disclosure would interfere with on-going enforcement activities in the Consent Decree case and in other consent decree negotiations within the meaning of Exemption 7(A).

Plaintiff responds that neither exemption applies because all of the documents were shown to or submitted by the defendants in the Consent Decree case and were part of a cooperative effort to revise the Consent Decree in defendants' favor. The plaintiff alternatively reasons that Exemption 5 cannot be read to apply to the documents because they were not internal agency documents within the meaning of FOIA. Disclosure to the Consent Decree defendants, plaintiff contends, destroys the documents' internal status. In addition, plaintiff independently argues that Exemption 7 is inapplicable because the nature of the cooperation between the parties in seeking to ameliorate the terms of the 1969 Consent Decree would turn the meaning of law enforcement purpose and investigatory records on its head.

### III. *Exemption 5*

■ The first issue presented is whether Exemption 5 authorizes the DOJ to withhold all or part of 32 documents, three of which were generated outside the agency and 29 of which were prepared by the agency in connection with the Consent Decree modification negotiations and either shown to or transmitted to the defendants in that case.

Exemption 5 provides that the mandatory disclosure provisions of the FOIA do not apply to "inter-agency or intra-agency memorandums or letters which would not be available by law to a party other than an agency in litigation with the agency." 5 U.S.C. Sec. 552(b)(5). In other words, the burden is on the DOJ to establish that the documents: "(1) are 'inter-agency or intra-agency memorandums or letters,' and (2) consist of material that 'would not be available by law to a party ... in litigation with the agency.'" *Federal Open Market Committee v. Merrill, supra,* 443 U.S. at 352, 99 S.Ct. at 2808; *Coastal States Gas Corp. v. Department of Energy,* 617 F.2d 854, 862, 868 (D.C.Cir.1980).

The DOJ argues strenuously that both the documents prepared by the government and shown to the Consent Decree defendants and the documents prepared by the Consent Decree defendants are "intra-agency ... memorandums or letters." In support of their arguments the DOJ cites *Ryan v. Department of Justice,* 617 F.2d

---

**10.** Declaration of Leo D. Neshkes, Chief, Legal Procedures Unit, Antitrust Division, (June 1, 1982) (hereinafter "Neshkes Declaration").

**11.** Declaration of Bernard M. Hollander, Chief, Judgment Enforcement Section, Antitrust Division, (June 1, 1982) (hereinafter "Hollander Declaration").

**12.** The DOJ also argues that certain of the documents are also exempt from disclosure under Exemption 5 because they fall within the attorney-work product and settlement negotiation privileges.

781 (D.C.Cir.1980); *Brockway v. Department of the Air Force,* 518 F.2d 1184 (8th Cir.1975); *Wu v. National Endowment for Humanities,* 460 F.2d 1030 (5th Cir.1972), *cert. denied,* 410 U.S. 926, 93 S.Ct. 1352, 35 L.Ed.2d 586 (1973); and *Soucie v. David,* 448 F.2d 1067 (D.C.Cir.1971). The Court finds each of these cases to be distinguishable from this case.

In *Ryan,* the D.C. Circuit considered whether advice solicited by the DOJ from individual Senators concerning judicial selection procedures was an "inter-agency or intra-agency" memoranda or letters. 617 F.2d at 784. The Court held that the documents fell within the meaning of "inter-agency" and "intra-agency," although prepared outside the agency. *Id.* at 789–90. Central to its decision, however, was the fact that the advice was obtained on the Department's initiative. *Id.* at 789.[13]

In this case, the DOJ has not refuted plaintiff's contention that the Consent Decree defendants submitted documents in an effort to seek modification of the 1969 Consent Decree. The fact that the DOJ originally brought the suit resulting in the Consent Decree is too remote an event to categorize the letters as a response to a DOJ request.[14]

It is also relevant that the Senators, unlike the Consent Decree defendants, are part of the federal government and exercise, collectively, concurrent power with the Executive Branch with respect to judicial

nominations, a governmental function. U.S. Const., Art. II Sec. 2 Cl. 2. The modification of a consent decree, on the other hand, involves negotiations between the DOJ and its adversary. It is not a purely internal governmental matter in which the DOJ is simply seeking the advice of disinterested consultants.[15]

In *Brockway,* the Eighth Circuit held that statements of witnesses to military personnel in a military aircraft safety investigation, as opposed to a pre-suit investigation, were exempt as intra-agency documents. 518 F.2d at 1194. The Court recognized the special importance of uncovering causes of aviation accidents and encouraging frank discussion, but expressly limited its interpretation of Exemption 5 to the "narrow facts" of the case and noted that it is the exception, not the rule, where disclosure defeats rather than supports the quality of government action. *Id.* More recently, however, the Ninth Circuit, in *Weber Aircraft Corp. v. United States,* held that similar statements of witnesses in a military aircraft accident investigation did not fall within Exemption 5.[16] Even under *Brockway,* it is still not clear whether "sunlight" is detrimental to the DOJ's Consent Decree negotiation process, and whether that fact, if true, is an adequate reason to preclude disclosure under FOIA.[17]

In *Wu,* the court held that reports of outside professors hired as consultants to review research grant proposals for the

---

**13.** The Court stated:

> We cannot overlook the fact that the documents were generated by an initiative from the Department of Justice ....

617 F.2d at 790.

**14.** Under the antitrust laws, the entry of the Consent Decree ended the initial investigation, and plaintiff's request for modification begins a new proceeding. *See Yoder Bros., Inc. v. California-Florida Plant Corp.,* 537 F.2d 1347, 1361–64 (5th Cir.1976), *cert. denied,* 429 U.S. 1094, 97 S.Ct. 1108, 51 L.Ed.2d 540 (1977).

**15.** The Court notes that only if the DOJ had sent out a questionnaire in *Ryan* with respect to an individual pending judicial nomination seeking substantive advice regarding the appointment would the *Ryan* case be analogous. Then the

Senators and the President would be potential adversaries, the matter under discussion would involve a concrete case, and the advice might not have received protection.

**16.** 688 F.2d 638, 642–44 (9th Cir.1982). In *Weber,* there was no issue of whether the statements were "intra-agency" memoranda because they were made and recorded by government employees. *Id.* at 641 n. 5.

**17.** The Court acknowledges the DOJ's statement in its summary judgment motion that disclosure could potentially inhibit future negotiations. The Court also notes that public scrutiny did not preclude the settlement of the DOJ's suit against American Telephone & Telegraph Co. *See United States v. American Telephone & Telegraph Co.,* 552 F.Supp. 131 (D.D.C.1982).

agency were exempt as predecisional intra-agency documents. 460 F.2d at 1032. The court relied on the fact that the National Endowment for the Humanities enabling legislation, 20 U.S.C. Sec. 959(a)(4), authorized it to hire independent consultants to review grant proposals, and converted them into *de facto* agency employees. *Id.* The present case is again distinguishable. The DOJ received advice from, and engaged in discussions with their adversaries, not paid consultants. To characterize the documents embodying these activities as internal requires the Court to expand Exemption 5 beyond the limit reached in *Wu.* Independent consultants are more akin to agency employees than an opposing party in litigation. Likewise, the decision in *Soucie v. David*, 448 F.2d at 1078 n. 44, is distinguishable because it too involved the receipt of advice from paid consultants hired by an agency.

In *County of Madison v. Department of Justice*, 641 F.2d 1036, 1038–39 (1st Cir. 1981), the court considered whether DOJ settlement negotiation documents in an Indian claims case were exempt from disclosure under FOIA. The DOJ asserted the deliberative process privilege of Exemption 5,[18] but the Court found, distinguishing *Ryan, Brockway* and *Wu*, that:

> [T]he Oneidas approached the government with their own interest in mind. While they came to parley, they were past and potential adversaries, not coopted colleagues. We recognize that the government also stood to benefit from a successful settlement, but we believe that expanding exemption five to include self-seeking petitioners "within" agencies would do more violence to statutory language than Congress' direction permits.

*Id.* at 1040. The Court held, with respect to letters submitted by the Oneidas to the DOJ, that while it:

> confess[ed] to feeling a sense of indecent exposure in countenancing a third party adversary obtaining confidential exchanges between the Indians' attorneys and the government[, it could not] agree that this means that Indians are "within" the Department of Justice.

*Id.* at 1042.

With respect to the documents prepared and submitted by the defendants in the Consent Decree case (Document Nos. 11, 21 and 22), the Court also finds they are not "inter-agency or intra-agency memorandums or letters." In the *Ryan, Brockway* and *Wu* cases, each court found that the documents were part and parcel of the internal deliberative process, and that the outside consultants had a formal relationship with the agency making them part of that process. *Ryan*, 617 F.2d at 789–90; *Brockway*, 518 F.2d at 1194; *Wu*, 460 F.2d 1031–32. Here, as in *Madison, supra*, these documents were submitted by an adversary as part of an effort to convince the agency to adopt the adversary's proposals. Any "internal" deliberations would have to take place after the documents were received. Recognizing the "indecent exposure in countenancing a third party adversary obtaining confidential exchanges between [the automotive industry] and the government," the Court finds that the documents numbered 11, 21, and 22 must be disclosed under the facts submitted by the parties.

■ With respect to the documents prepared by the DOJ and transmitted or shown to the defendants in the Consent Decree case, the question for the Court is somewhat more complex. These documents were prepared by agency personnel and consist of draft Consent Decrees with

---

18. In *Madison,* the court recognized the government's predicament:

> We are sympathetic to the logic and force of this policy plea. The government engages in a prodigious amount of litigation, both as plaintiff and defendant. Negotiated settlement is the most efficient means to terminate such disputes. Knowledge that written settlement communications will be available to anyone, irrespective of his or her need to know ... inevitably will to some extent impede this means.

641 F.2d at 1040.

agency comments thereon and accompanying memoranda discussing the mental impressions and views of various agency personnel. They appear, at first blush, to involve the deliberative process of the DOJ leading the proposal of the modified Consent Decree. They allegedly contain the personal predecisional views of subordinate agency individuals. Neshkes Declaration, pars. 10, 11, 12, 13–16; Defendant's Exh. E. The threshold question still remains, however, whether once shown to the defendants in the Consent Decree case, they lose their status as "intra-agency" documents. As the Court in *Coastal States* teaches:

> [E]ven if the document is predecisional at the time it is prepared, it can lose that status if it is adopted, formally or informally, as the agency position on an issue *or is used by the agency in its dealings with the public.*

617 F.2d at 866 (emphasis added).[19]

 The Court in *Madison* considered a slightly different problem. It found that "[l]etters from the Justice Department to the Oneida attorneys discussing the settlement ..." were not "within" the agency, but that "[d]ocuments relating to settlement offers and negotiation strategy within the Department of Justice" satisfied "the first 'intra-agency' step of analysis, since they consist entirely of communications between government officials." 641 F.2d at 1040–41, 1042–43. It did not decide whether voluntary disclosure of these latter internal materials would bar the application of Exemption 5.

The remaining documents in the present case involve three letters from the DOJ to the Consent Decree defendants, Document Nos. 31, 33, and 35, as well as draft consent decrees and internal memoranda, Document Nos. 5–10, 12–20, 24–30, 32, 34, 36–37, which the DOJ concedes were shown to the Consent Decree defendants during the negotiations. The salient factor relied on by the *Madison* court to distinguish its treatment of the letters from the internal memoranda was their use, i.e., the letters were disclosed to the Oneida attorneys as part of the negotiation process and the memoranda were used internally as are most predecisional documents. This analysis is consistent with that in *Coastal States* where the court stressed that the "function" of a document is "crucial" to determining whether an exemption applies. 617 F.2d at 858, *citing, N.L.R.B. v. Sears, Roebuck & Co.,* 421 U.S. 132, 95 S.Ct. 1504, 44 L.Ed.2d 29 (1975).

The Court finds that, while these documents may at one time have been used for internal advisory purposes and would therefore be protected, when the DOJ elected to use them as tools in their negotiations with the public [the defendants] they lost their internal status, and their qualification for Exemption 5.

Two additional factors lead the Court to this result. First, the legislative history of FOIA[20] suggests that Congress intended internal memoranda, disclosed to outsiders, fall outside the scope of Exemption 5. Second, this Circuit and the Supreme Court

---

**19.** Congress knew how to provide for the confidentiality of investigative files, and in fact did so in Exemption 7. *See* discussion, *infra,* at pages 23–36. Congress also knew how to provide for nondisclosure by organic statute. In Title VII of the Civil Rights Act, 42 U.S.C. Sec. 2000e–5(b), for example, the Equal Employment Opportunities Commission ("EEOC"), charged with the statutory duty to attempt to conciliate and settle discrimination cases, is barred from disclosing, under FOIA or otherwise, the fruits of its settlement efforts to members of the public. Despite the clear language of this provision, the Supreme Court has construed the provision narrowly—permitting disclosure of EEOC files

to persons filing charges with the EEOC and barring disclosure only to other members of the public, including those charged with discrimination. *See E.E.O.C. v. Associated Dry Goods Corp.,* 449 U.S. 590, 101 S.Ct. 817, 66 L.Ed.2d 762 (1981). There is no statutory bar to disclosure in the present case, and the Supreme Court's reading of the term "public" in *Dry Goods* suggests that by disclosing the documents at issue to the Consent Decree defendants, they have been disclosed to the public.

**20.** *See* note 5, *supra.*

require strict construction of the FOIA exemptions.[21]

In *Aviation Consumer Action Project v. Washburn*, 535 F.2d 101, 108 (D.C.Cir. 1976), the Court read Exemption 5 into the Federal Advisory Committee Act to permit the closing of advisory committee meetings conducted in connection with an agency's decision-making authority. The Court relied on the clear purpose of the Federal Advisory Committee Act to promote candid discussion. *Id.* at 106–08. Shortly thereafter, however, Congress voiced its disapproval of the effect of *Washburn* in the Conference Report accompanying the 1976 amendments to FOIA, and adopted an amendment to the Federal Advisory Committee Act providing that advisory committee meetings may only be closed pursuant to a new set of criteria in the Government in the Sunshine Act. H.Conf.Rep. 94–1441, 94th Cong., 2d Sess. 26 (1976). Congress has spoken and the Court must recognize that, absent an independent statutory exemption, FOIA mandates disclosure. Likewise, absent an express statutory exemption, disclosure of confidences to adversaries in consent decree negotiations is mandatory.

The Court is sympathetic to the DOJ's predicament. Disclosure of these documents may arguably stifle consent decree negotiations. These factors, however, are for legislative not judicial concern, and so the Court must hold that those documents prepared by and disclosed or transmitted to the Consent Decree defendants are no longer "inter-agency or intra-agency" documents and are beyond the scope of protection of Exemption 5.

██ Even assuming, however, that the documents in issue are internal agency documents, the DOJ has failed to prove they are protected by an applicable discovery privilege. Three privileges are asserted: the deliberative process privilege, the work product privilege, and the settlement negotiation privilege.

The settlement negotiation and deliberative process privileges cannot apply for several related reasons. In *Federal Open Market Committee v. Merrill supra*, the Supreme Court found a limited Exemption 5 privilege for confidential commercial information held by a government agency prior to the sale of government securities. 443 U.S. at 352–60, 99 S.Ct. at 2808–12. The Court reviewed the legislative history of FOIA and the other exemptions to the Act. It found that a limited commercial information privilege could be found within Exemption 5 because it was contemplated by Congress and was not duplicative of the other exemptions to disclosure. *Id.* It emphasized that F.R.C.P. 26(c)(7) would enable a court to enter a protective order (i.e., a type of privilege) to cover this kind of information, although no court had jurisdiction to issue such an order at the time it was needed. *Id.* at 356–57, 99 S.Ct. at 2810.

More importantly, the Court distinguished the limited commercial privilege from the deliberative process privilege. *Id.* at 359–60, 99 S.Ct. at 2811–12. Relying heavily on the legislative history of FOIA, and the presumption against recognizing new discovery privileges under Exemption 5, it found that the retention of commercial information supporting monthly national money supply decisions for 30 days by the Federal Reserve Board was temporary in nature and was "substantially similar to confidential commercial information generated in the process of awarding a contract." *Id.* at 359–61, 99 S.Ct. at 2811–13. Conceding that there is no absolute privilege for trade secrets and similar confidential information, the Court considered the need for protection and the temporary nature of the agency's interference with FOIA, and upheld the denial of plaintiff's request for immediate relief pending a trial below on the merits of the agency's assertion of privilege. *Id.* at 362–63 & n. 24, 99 S.Ct. at 2813–14 & n. 24.

The DOJ, like the Federal Reserve Board, argues that disclosure would undermine and frustrate its efforts at antitrust settlement negotiations and place it at a

**21.** *Id.*

competitive disadvantage to other litigants if it is forced to disclose antitrust consent decree documents both during and after settlement negotiations in this and in all other cases. The DOJ's argument fails in two principal respects. First, unlike the protection sought in *Merrill,* the DOJ seeks permanent not temporal relief, and there is no clear congressional intent to include a settlement negotiation privilege within Exemption 5.[22] Second, in the antitrust decree modification context, the DOJ is in the position of petitioning the supervisory court for a protective order under F.R.C.P. 26(c) which would qualify as a *per se* discovery privilege and bar to disclosure under FOIA. *Cf. id.* at 362 n. 24, 99 S.Ct. at 2813 n. 24. The DOJ without seeking protection from the Federal District Court in California chose to share its confidences with the Consent Decree defendants, and accordingly is subject to the presumption under FOIA that administrative action be subject to disclosure.

Moreover, the argument that a "settlement negotiation" privilege is authorized under F.R.E. 408 is also misplaced. The cited rule limits a document's relevance at trial, not its disclosure for other purposes.[23] The protection afforded by Rule 408 is far less broad than the DOJ asserts. While its intent is to foster settlement negotiations, the sole means chosen to effectuate that end is a limitation on their admission of evidence produced during settlement negotiations for the purpose of proving liability at trial, not the application of a broad discovery privilege. Otherwise parties would be unable to discover compromise offers which could be offered for a relevant purpose, i.e., proving bias or prejudice of a witness, opposing a claim of undue delay, proving an effort to obstruct a criminal investigation or prosecution, or enforcing a settlement agreement.

■ The DOJ next argues that the deliberative process privilege attaches to these documents, again assuming they retain their internal character. By sharing the DOJ's "mental impressions" and once "tentative opinions" with their adversaries in litigation, documents which may have at one time fallen within the deliberative process privilege lose their predecisional character and become final views of the agency. Thus, they cannot qualify for permanent protection. *Coastal States, supra,* 617 F.2d at 866.

■ Finally, the DOJ also asserts the attorney-work product privilege for Documents 24–30, 32 and 36. These are memoranda which discuss the views of various DOJ officials as the settlement negotiations progressed. The DOJ concedes, however, they were shown to their adversaries. The work product doctrine only applies where the documents in question have not been disclosed to persons who are not part of, or authorized by law, to act on behalf of the agency in preparation for litigation. The central premise of the work product doctrine is protection of the adversarial process and documents which are voluntarily shown to an adversary do not fall within that purpose. *See Coastal States, supra,* 617 F.2d at 684; *Mead Data Central, Inc. v. Department of the Air Force,* 566 F.2d 242, 242–53 (D.C.Cir.1977); *Grumman Aerospace Corp. v. Titanium Metals Corp.,* 91 F.R.D. 84, 87–89 (E.D.N.Y.1981) (work product protection is waived by disclosure during settlement negotiations in the absence of a protective order under Rule 26(c) or an order of confidentiality from the supervising court).

## IV. *Exemption 7(A)*

■ The DOJ relies on Exemption 7(A) as an alternative ground for withholding

---

**22.** *See* note 5, *supra.*

**23.** 2 WEINSTEIN'S EVIDENCE Par. 408[1] at 408–14 (1981) ("It should be pointed out that the rule should not be construed so as to render evidence otherwise discoverable inadmissible solely because it was presented during the settlement negotiations. The policy of allowing open and free negotiations between parties by excluding conduct or statements made during the course of these discussions is not intended to conflict with the liberal rules of discovery embodied in the Federal Rules of Civil Procedure.").

both the documents prepared by the Consent Decree defendants and those prepared by the DOJ but shown or transmitted to their adversaries. Exemption 7(A) protects:

> investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings ....

5 U.S.C. Sec. 552(b)(7)(A). The DOJ argues that the negotiation of modified consent decrees is one method by which it enforces the antitrust laws, and that the documents collected in connection therewith are investigatory records which, if disclosed, would interfere with efficient administration of consent decree enforcement in this and other antitrust cases.

In explanation the DOJ states:

> The present post-decree period is a critical part of this enforcement proceeding because upon any determination by the Antitrust Division that the automobile manufacturers were not complying with the decree it would be appropriate for the Division to institute further judicial proceedings if necessary to compel compliance. Neshkes declaration, par. 18. Similarly, the modification of the original consent decree is an integral part of the enforcement proceeding. The Division reviews and modifies existing consent decrees as part of its overall law enforcement responsibilities. This process enables the Division to ensure that the consent decrees provide for maximum competition. Hollander declaration, par. 14.

Defendant's Motion for Summary Judgment, at 10. The difficulty with this argument, as plaintiff points out, is that it assumes an investigation was underway, and that the documents being withheld were part of the investigation.

A review of the statutory language and the subsequent case law suggests that two factors need be shown for the DOJ to successfully assert Exemption 7(A). First, the DOJ must show that each document is part of an "investigatory record" which was "compiled for law enforcement purposes." Second, it must show that disclosure would interfere with an enforcement proceeding. 5 U.S.C. Sec. 552(b)(7)(A). *N.L.R.B. v. Robbins Tire & Rubber Co.*, 437 U.S. at 226–34, 98 S.Ct. at 2319–23; *Stern v. S.B.A.*, 516 F.Supp. 145, 149–50 (D.D.C.1980).

A. *Are the documents investigatory records compiled for a law enforcement purpose?*

■ The DOJ cites *Rural Housing Alliance v. Department of Agriculture*, 498 F.2d 73, 80 (D.C.Cir.1974), and *Stauss v. Internal Revenue Service*, 516 F.Supp. 1218, 1222 (D.D.C.1981), for the proposition that the documents are "investigatory records" regardless of whether they ultimately lead to an enforcement action. The fact they were compiled in connection with a law enforcement type proceeding is argued to be sufficient. This argument ignores the important distinction recognized by the *Rural Housing* court between a directed inquiry into illegal acts and routine surveillance or oversight. *Stern v. S.B.A.*, 516 F.Supp. at 150, *citing Rural Housing*, 498 F.2d at 81.

In other words, before a court can find that a document is an investigatory record, it must first determine if it was compiled for a law enforcement purpose. *Id.*[24] In making this finding, the court in *Rural Housing* instructs that the investigation must be found to "focus on specifically alleged illegal acts, illegal acts of particular identified officials, acts which if proved result in civil or criminal sanctions." 498 F.2d at 81.

■ In this Court's view, the DOJ has not met its burden. The documents with-

---

**24.** In *Weissman v. C.I.A.*, 565 F.2d 692, 694–96 (D.C.Cir.1977), documents prepared and collected by the C.I.A. in connection with its investigation of Mr. Weissman as to suitability for C.I.A. operations were held not to be documents compiled for a law enforcement purpose. *See also* *Mitsubishi Electric Corp. v. Department of Justice*, Civil Action No. 76–0813, slip op. at 3–4 (D.D.C. April 1, 1977) (investigation of anticompetitive practices which disclosed fact which might lead to antitrust enforcement litigation held an enforcement purpose.)

held do not appear to consist of evidence gathered to prove civil or criminal liability. Rather, they are described in the DOJ's affidavits as draft settlement agreements, internal memoranda and notes discussing those agreements, and correspondence between the DOJ and its adversary with respect to the consent decree negotiations. They were designed to alleviate the burdens of, not enforce, the 1969 Consent Decree.

Even if the Court accepts the DOJ's expansive interpretation of FOIA, i.e., that law enforcement includes the encouragement to settle based on the DOJ's future willingness to modify consent decrees, it has still failed to show that the documents withheld are "investigatory records." Before the Court can accept such an assertion, the DOJ must show that an investigation was or is underway. The DOJ concedes that the information was compiled in connection with an inquiry into whether the DOJ could reverse its position in the Consent Decree case and reduce the burdens which had been imposed on the automotive industry in 1969 and the subsequent modification negotiations. Hollander Declaration pars. 6–10. *See also United States v. Motor Vehicle Manufacturers Ass'n, supra,* at 2–6. Nowhere does it contend that it was collecting investigatory materials to prosecute the defendants in the Consent Decree case. These are not enforcement, but modification records.

Finally, the Court notes that it is unsure how the documents withheld even qualify as "enforcement records" when, by law, the enforcement investigation of the automotive industry ended in 1969 with the entry of a consent judgment. As the DOJ is certainly aware, the tolling of the statute of limitations in an antitrust case is lifted one year after a consent judgment is entered, and the rationale is the matter is settled and the investigation is over. *Yoder Bros., Inc. v. California-Florida Plant Corp.,* 537 F.2d 1347, 1361–64 (5th Cir.1976), *cert. denied,* 429 U.S. 1094, 97

S.Ct. 1108, 51 L.Ed.2d 540 (1977). The only conceivable purpose of a law enforcement investigation after the 1969 judgment was entered would be to monitor compliance and collect information which might lead to prosecution. These facts, however, are not before the Court and it accordingly finds that the first test under Exemption 7(A) has not been satisfied.

B. *Does release of the documents interfere with an enforcement proceeding?*

Assuming, however, that the DOJ is entitled to an expansive reading of the terms "investigation" and "law enforcement purpose," a presumption which the FOIA renders impermissible,[25] the DOJ must also show that the release of the documents interferes with a law enforcement proceeding. The DOJ asserts two kinds of impermissible interferences. First, that the release of the documents would impede its compliance monitoring with respect to the Consent Decree defendants, and second, it would deter future antitrust defendants from settling their cases, or at least make it more difficult to resolve antitrust cases through the use of consent decrees.[26]

■ The Court is sympathetic to the DOJ's position and recognizes the value in terms of cost effectiveness and efficient utilization of resources that consent judgments provide. The Court also acknowledges the strong public interest in settlement activities. *See County of Madison v. Department of Justice,* 641 F.2d at 1040; *Reichenbach v. Smith,* 528 F.2d 1072 (5th Cir.1976).

■ In enacting the FOIA, Congress determined that administrative decisions, whether they be right or wrong, be subjected to sunlight. Congress recognized that there may be situations where the efficiency of decision-making could be impaired, but determined that the value of opening up and exposing agency action to public scrutiny would enhance the ultimate out-

---

**25.** *See note 5, supra.*

**26.** Hollander Declaration, pars. 11–23.

come and outweigh any harms. *Soucie v. David,* 448 F.2d 1067, 1076–77 (D.C.Cir. 1971). *See Tax Analysts and Advocates v. I.R.S.,* 505 F.2d 350, 355 (D.C.Cir.1974); *Getman v. N.L.R.B.,* 450 F.2d 670, 678 (D.C.Cir.1971). In those situations where Congress recognized that sunlight would impede rather than enhance the decision-making process, it explicitly provided for exemptions to the rule of affirmative disclosure such as Exemption 5, Exemption 7(A), or Exemption 3, which allowed for specific exemption by other statutes. 5 U.S.C. Sec. 553(b)(5), (7)(A), and (3). *See Jordan v. Department of Justice,* 591 F.2d 753, 781 (D.C.Cir.1978) (en banc) ("the whole question of what is to be disclosed is one on which the Congress has spoken in precise, enumerated detail ... [i]f Congress has erred, Congress has erred, and it is not for this or any other Court to rewrite a statute.").

The DOJ does not argue that sunlight is inefficient in the broader sense, but rather that Congress included the words "interference with law enforcement proceedings" to preclude disclosures which make consent decree negotiations more difficult. On its face the argument is plausible, but in accordance with the scrutiny FOIA requires,[27] the argument fails.

In 1974, Congress amended the FOIA, in large part, to reverse the Supreme Court's decision in *E.P.A. v. Mink,* 410 U.S. 73, 93

S.Ct. 827, 35 L.Ed.2d 119 (1973), which limited the availability of *in camera* review of classified documents. *N.L.R.B. v. Robbins Tire & Rubber Co.,* 437 U.S. at 226, 98 S.Ct. at 2319. No change in Exemption 7 was proposed or considered while the bills were before their respective committees. *Id.* at 227, 98 S.Ct. at 2319–20. On the floor, however, Senator Hart proposed an amendment,[28] which was ultimately enacted to clarify the narrow scope of Exemption 7 and place the burden on the government to justify nondisclosure of enforcement records.[29] The amendment was directed at a series of cases holding all materials in "investigatory files" to be entirely exempt from disclosure regardless of their function or effect. *N.L.R.B. v. Robbins Tire & Rubber Co.,* 437 U.S. at 228–30, 98 S.Ct. at 2320–21. In discussing the amendment, Senator Hart addressed the specific context in which Exemption 7(A) was intended to apply—a *"premature* release of evidence or information *not* in the possession of known or potential defendants ... [which] impedes any investigation *before* the proceeding." [30]

The DOJ relies on several cases [31] to refute the Center's argument that disclosure to the Consent Decree defendants vitiates the applicability of Exemption 7(A). The burden, however, is not on the plaintiffs to show the documents are subject to release, but rather on the DOJ to show

---

**27.** *See Cambell v. H.H.S.,* 682 F.2d 256 at 257 (D.C.Cir. Feb. 2, 1982) (district court must precisely examine claims for exemption under 5 U.S.C. Sec. 552(b)(7)(A)), and note 5, *supra.*

**28.** The Amendment, which is identical to the present language of Exemption 7, provided:
> On page 11, line 15, after the period, insert the following new subsection:
> (3) Section 552(b)(7) is amended to read as follows: "Investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would (A) interfere with enforcement proceedings, (B) deprive a person of a right to a fair trial or an impartial adjudication or constitute a clearly unwarranted invasion of personal privacy, (C) disclose the identity of an informer, or (D) disclose investigative techniques and procedures."

Senate Debate and Votes (May 30, 1974), *reprinted in* House Committee on Government

Operations and Senate Committee on the Judiciary, Freedom of Information Act and Amendments of 1974 (Pub.L. 93–502), Source Book, 94th Cong., 1st Sess. 332 (Joint Committee Print) (hereinafter "Source Book").

**29.** Source Book at 332–33.

**30.** *Id.* (Emphasis added). Of course, this also assumes the documents are "investigatory records."

**31.** Defendant's Motion for Summary Judgment, *citing, New England Medical Center Hospital v. N.L.R.B.,* 548 F.2d 377, 383 (1st Cir.1976), *Amolsch & Madden, Inc. v. F.T.C.,* Civil No. 77–1353 (D.D.C. June 30, 1978), *affirmed and reprinted in* 591 F.2d 809 (D.C.Cir.1978); *Mitsubishi Electric Corp. v. Department of Justice, supra,* slip op. at 4–5.

interference. Even assuming that a show-
ing of prior disclosure to the DOJ's adver-
saries is not determinative, the DOJ must
still show that the release impedes an in-
vestigation before the initiation of a pro-
ceeding.[32] As noted above, the release at
this time of the documents at issue will
occur after the termination of any proceed-
ing to which the documents are relevant.[33]
Moreover, the cases cited by the DOJ are
distinguishable from the present case, be-
cause in each of those cases, the agency
demonstrated to the satisfaction of the re-
spective courts that the relevant documents
were collected or being used in on-going
investigations initiated by each agency and
that a future "proceeding" was possible
based on those documents.[34] In the
present case, the DOJ has not met its bur-
den of showing that the documents were
collected or are being used in an on-going
investigation. While compliance with the
modified decree entered in November, 1982
will certainly be monitored, the yardstick
by which compliance will be measured will
be the modified decree and the results of
future investigations. The Court is also
not convinced that the cases cited by the
DOJ overturn the principle enunciated by
Senator Hart that disclosure to adversaries
precludes the assertion of Exemption 7(A).

 Finally, the DOJ alternatively ar-
gues that the disclosure of the documents
would interfere with all consent decree ne-
gotiations, present or future. Citing *N.L.
R.B. v. Robbins Tire & Rubber Co., supra,*
the DOJ asserts that Exemption 7(A) may
be applied to particular "types" of enforce-
ment proceedings, and that even if it would
not interfere with the prior case against
the automotive industry, it will chill frank
negotiation in subsequent cases.

In *Robbins,* the Supreme Court held that
a "generic" effect was sufficient to invoke
Exemption 7(A) with respect to the disclo-
sure of potential witness statements prior
to an administrative enforcement hearing.
437 U.S. at 242–43, 98 S.Ct. at 2327. It did
not, as the DOJ suggests, hold that the
witness statements would be protected af-
ter the hearing was held. *Id.* at 241, 98
S.Ct. at 2326. *Cf. Federal Open Market
Committee v. Merrill,* 443 U.S. at 362–63,
99 S.Ct. at 2813–14 (confidential commer-
cial information held by the government is
protected for a "slight" period of time un-
der Exemption 5). In the context of the
present case, *Robbins* only suggests that
prior to the entry of a consent decree may
documents prepared in connection with ne-
gotiations fall within Exemption 7(A).

The Supreme Court's analysis in *Robbins*
further bolsters a finding that disclosure is
required. The Court in *Robbins* carefully
scrutinized the legislative history of FOIA
and found, unlike in this case, that Con-
gress explicitly intended for witness state-
ments in N.L.R.B. hearings to be exempt
from disclosure. *Id.* 437 U.S. at 223–34, 98
S.Ct. at 2317–23. In addition, it reviewed
discovery practice before the N.L.R.B. and
the applicable statutory provision (29
U.S.C. Sec. 156), and found that absent an
express provision altering a long history of

**32.** *See Cambell v. H.H.S.,* No. 81–1839, slip op.
at 15 & nn. 18, 19 (D.C.Cir.1982) (prehearing
disclosure would discourage witness coopera-
tion with investigatory board).

**33.** *See* notes 2 and 14, *supra.*

**34.** *See* cases cited in note 31, *supra,* and *Timken
v. United States Customs Service,* 531 F.Supp.
194, 199 (D.D.C.1981). In addition, the DOJ
cites *Brinkerhoff v. Montoya,* 3 GDS par. 82,421
(N.D.Tex.1981), in its Supplemental Motion in
support of its assertion of Exemption 7(A). The
DOJ's own analysis of *Brinkerhoff* explains why
it is inapposite to the present case. The Court
found that the documents, albeit shared with
defendants, were collected and being used in an
on-going compliance investigation which fo-
cused directly on the potential wrongdoing of a
defendant. Here, the investigation was cooper-
ative in nature and focused not on bringing
charges, but on favorably modifying a consent
decree. The Court concedes that another court
might find that a compliance investigation
which results in a modification of a consent
decree may constitute an "on-going" investiga-
tion, but those facts are not before this Court.
There is no evidence in the record that there
were any outstanding violations of the Consent
Decree or there was any effort on the DOJ's part
to bring an enforcement action against the Con-
sent Decree defendants at the time the settle-
ment modification negotiations took place.

confidential prehearing discovery, non-disclosure is warranted.

Disclosure of information collected pursuant to Section 2 of the Antitrust Procedures and Penalties Act ("APPA"), 15 U.S.C. Sec. 16(b)–(g), is far different. The APPA itself clearly provides for publication of a proposed decree as well as for disclosure, as follows:

> (g) Disclosure of communications between defendants and officers and employees of United States. Not later than 10 days following the date of the filing of any proposal for a consent judgment under subsection (b), each defendant shall file with the district court a description of any and all written or oral communications by or on behalf of such defendant, including any and all written or oral communications on behalf of such defendant, or other person, with any officer or employee of the United States concerning or relevant to such proposal, except that any such communications made by counsel of record alone with the Attorney General or the employees of the Department of Justice alone shall be excluded from the requirements of this subsection. Prior to the entry of any consent judgment pursuant to the antitrust laws, each defendant shall certify to the district court that the requirements of this subsection have been complied with and that such filing is a true and complete description of such communications known to the defendant or which the defendant reasonably should have known.

15 U.S.C. Sec. 16(g). The APPA was passed with the explicit intent of exposing the non-lawyering aspects of consent decree negotiations to sunlight and public comment. In the House Report to the bill, the Committee explained that the integrity of the consent decree process was in question. Specifically, the Committee explained:

> Given the high rate of settlement in public antitrust cases, it is imperative that the integrity of and public confidence in procedures be assured. The bill seeks precisely to accomplish this objective and focuses on the various stages of consent decree procedures, including that process by which proposed settlements are entered as a court decree by judicial action.
>
> ... In [a] 1959 Report, the House Antitrust Subcommittee concluded, "The consent decree practice has established an orbit in the twilight zone between established rules of administrative law and judicial procedures." The bill, in this respect, *is designed to substitute "sunlight" for "twilight"* and to regularize and make uniform judicial and public procedures that depend upon the Justice Department's decision to enter into a proposal for a consent decree.[35]

Thus, unlike the court in *Robbins*, the DOJ cannot cite either a substantial passage in the legislative history of FOIA or a statutory rationale for invoking the exemption.[36]

Accordingly, this Court holds that none of the documents withheld by the DOJ are

---

**35.** H.Rep. No. 93–1463, 93d Cong., 2d Sess. (Oct. 11, 1974), *reprinted in* [1974] USCCAN 6535, 6536, 6537 ("House Report"). *See United States v. Central Contracting Co., Inc.,* 537 F.Supp. 571 (rulings with respect to whether a variety of documents are "determinative" material under 15 U.S.C. Sec. 16(b)).

**36.** The Court is mindful that 15 U.S.C. Sec. 16(g) may not be directly on point in that it may not itself require disclosure of the documents at issue in this case. Admittedly, it distinguishes between "lawyering" and "lobbying" contacts and excludes from disclosure information submitted in connection with the "lawyering" or negotiating process. House Report at 6538. The Section, however, does not purport to be the exclusive mechanism for disclosure, and the authority to disclose certain documents is not the authority to withhold documents. *Mobil Oil Corp. v. F.T.C.,* 406 F.Supp. 305 (S.D.N.Y.1976). Any claim that the APPA is the exclusive means for disclosure has not and could not be raised in this case. FOIA applies to all agencies independent of their enabling legislation. Unless there is an explicit provision in an agency's organic statute precluding release of the information in question, release is mandatory. 5 U.S.C. Sec. 552(b)(3)(A). Moreover, even if there is an explicit statutory requirement for nondisclosure, absent the establishment of criteria for sorting exempt from non-exempt materials, the information must be disclosed. 5 U.S.C. Sec. 552(b)(3)(B). *See Seymour v. Barabba,* 559 F.2d 806 (D.C.Cir.1977).

entitled to the protection of Exemption 7(A).

## ORDER

In accordance with the accompanying opinion, and the record as a whole, it is this 16th day of June, 1983,

ORDERED that plaintiff's motion for an expedited hearing is denied as moot; and it is

FURTHER ORDERED that defendant shall provide to plaintiff forthwith complete copies of Document Nos. 5–22 and 24–37 which were indexed in defendant's Exhibit E; and it is

FURTHER ORDERED that plaintiff shall have leave for 30 days to file an appropriate request for attorneys fees.